UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES ALBERT POLSTON, JR., : | |
|     Petitioner | : CIVIL NO. 4:CV-05-378 |
| | : |
|    v. | : |
| | : |
| | : (Judge McClure) |
| | : |
| ATTORNEY GENERAL JERRY | : |
| PAPPERT, ET AL., | : |
|     Respondents | : |

## **MEMORANDUM AND ORDER**

November 22, 2005

**Background**

    This pro se petition for writ of habeas corpus was initiated by James Albert Polston, Jr. ("Petitioner"), an inmate presently confined at the State Correctional Institution, Cresson, Pennsylvania. Named as Respondents are Pennsylvania Attorney General Jerry Pappert, the Pennsylvania Board of Probation and Parole ("Parole Board") and the Warden at Petitioner's prior place of incarceration. Service of the petition was previously ordered.

    Polston was convicted of involuntary deviate sexual intercourse, rape, statutory rape, incest, and related offenses following a 1991 non-jury trial in the Bucks County Court of Common Pleas. He was subsequently sentenced to a seven (7) to twenty

(20) year term of incarceration.  His conviction was affirmed on direct appeal.  See Commonwealth v. Polston, 616 A.2d 669 (Pa. Superior 1992).  A petition for allowance of appeal to the Pennsylvania Supreme Court was denied.  See Commonwealth v. Polston, 626 A.2d 1157 (Pa. 1993).  The minimum term of his sentence expired on January 1, 1998.  Polston's maximum sentence expires on January 1, 2011.

On February 13, 1998, the Petitioner was denied parole for the first time.  The Parole Board's written denial cited numerous factors for its decision including the Petitioner's substance abuse, habitual offenses, need for sex offender treatment and failure to obtain a favorable recommendation from the Department of Corrections ("DOC").  Polston was denied release on parole for a second time during December, 1999.  A third parole application was denied on January 22, 2004.

Following the last parole denial, Polston filed an unsuccessful complaint in mandamus with Pennsylvania's Commonwealth Court.  A subsequent petition for allowance of appeal was denied by the Pennsylvania Supreme Court.

In December 1996, the Pennsylvania state legislature amended the law governing parole (61 Pa. Stat. § 331).  Under the modified criteria, protection of the safety of the public is the paramount condition which must be considered in determining parole eligibility.  Polston's  present action contends that the Parole Board violated the Ex

Post Facto Clause by not applying the parole regulations which were in effect at the time of his original sentencing. He adds that the Parole Board's retroactive application of the 1996 amendments in addressing his parole application violated due process. In addition, Polston maintains that the grounds for denial of release cited by the Parole Board were "pretextual, boilerplate, and without basis." Record document no. 1, additional page 2. His contention is based on the Parole Board's purported erroneous determination that he had not successfully completed sex offender treatment. Petitioner concludes that he would have been granted release under the parole policies which were in effect at the time of his sentencing.

Respondents argue that Polston is not entitled to habeas corpus relief because: (1) his claims are only properly asserted in a civil rights action pursuant to 42 U.S.C. § 1983; and (2) the most recent denial of parole did not violate the Ex Post Facto Clause. This petition is ripe for consideration. Also pending are Petitioner's motion to compel discovery. (Record document no. 14) and his request to supplement his petition (Record document no. 13).

**Discussion**

**Motion to Supplement**

Polston has filed a request to supplement his petition with an additional claim that the DOC "is entering patently false information into his inmate record." Record

document no. 13, p. 1. He indicates that false information regarding his participation in sex offender therapy which has been made part of his institutional record caused the denial of his parole application. Accompanying the request is a proposed supplement.

Petitioner claims that he has successfully completed sex offender programs at both SCI-Cresson and the State Correctional Institution, Camp Hill, Pennsylvania. Despite his completion of those programs, Polston was allegedly denied an institutional recommendation for parole by his Unit Management Team on August 2, 2005 on the grounds that he failed to participate in sex offender programs. Petitioner contends that he had a contractual agreement with the DOC which he satisfied by completing sex offender programs, but that the DOC breached its contractual obligation by not forwarding certain paperwork from SCI-Cresson. Due to the absence of said paperwork, the DOC refused to recommend him for parole.

Respondents argue that the petition to supplement should be denied because the allegations set forth therein are only properly considered in a civil rights action, Polston failed to exhaust his administrative remedies, and the alleged paperwork snafu by the DOC does not implicate a violation of Polston's constitutional rights by the Parole Board.

The claim set forth in Polston's proposed supplement is clearly unrelated to the issue of whether an ex post facto violation occurred. It is noted that the original

petition was filed in February, 2005, and concerns a January 22, 2004 denial of parole. Accordingly, a challenge to an unfavorable August 2, 2005 Unit Management Team recommendation is not germane to Polston's original petition. Consequently, the petition to supplement will be denied without prejudice. Petitioner, if he so chooses and upon satisfaction of the exhaustion requirement, may reassert his proposed supplemental claim in a new, separate action. Nonetheless, since the issue of completion of sex offender treatment is raised in the original petition, the Court will take into consideration Petitioner's claim that he has completed sex offender programming.

**Petition to Compel Discovery**

Also pending before the Court is Polston's petition for discovery and deposition of records. See Record document no. 14. This is Polston's second request that this Court provide him with various "material, books and papers, and records." Id. at p. 1. In his latest filing, the Petitioner lists eleven (11) separate document requests which he indicates will support his claim of entitlement to federal habeas corpus relief.

A habeas petitioner may be granted leave of Court to engage in discovery.[1]  By

---

[1] Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts provides that a party must obtain leave of court in order to engage in discovery under the Federal Rules of Civil Procedure.  If the applicant establishes good cause, discovery is available at the discretion of the court.  "In order to establish

5

Order dated March 14, 2005, this Court denied a prior, similar request by the Petitioner.  Based on a review of Polston's latest submission, it remains the determination of this Court that full and fair disposition of this action does not require review of the requested discovery materials.   However, the documents accompanying the Petitioner's request will be taken into consideration.  The petition for discovery and deposition of records will be denied.

**Wilkinson**

The Respondents' initial argument maintains that under Wilkinson v. Dotson, _ U.S. __, 125 S. Ct. 1242 (2005), this matter should be dismissed because the Petitioner's present claims should be asserted in a civil rights complaint pursuant to 42 U.S.C. § 1983.

During the time period surrounding the filing of this petition on February 23, 2005, there were important federal and state case law developments in the area of when, how, and if, a Pennsylvania state prisoner must seek state court review of a denial of parole.  Specifically, in January of 2005, the Third Circuit Court of Appeals in Defoy v. McCullough, 393 F.3d 439, 445 (3d Cir. 2005), held that a state prisoner challenging the denial of parole on constitutional grounds, other than for a violation of

---

good cause a petitioner must point to specific evidence that might be discovered that would support a constitutional claim." Taylor v. Carroll,  2003 WL 22075693 *1  (D. Del. Aug. 29, 2003)(citing Marshall v. Hendricks,  103 F. Supp.2d 749, 760 (D.  N.J. 2000)(internal quotations omitted)).

the Ex Post Facto Clause, was not required to exhaust state court remedies before pursuing federal habeas review.

Almost exactly one month later, the Pennsylvania Supreme Court decided Cimaszewski v. Bd. of Prob. & Parole, 582 Pa. 27, 868 A.2d 416, 427 (2005), which overruled Finnegan v. Bd. of Prob. & Parole, 576 Pa. 59, 838 A.2d 684 (2003), by recognizing that an ex post facto claim may arise from the application of the 1996 amendments to an applicant convicted prior to the enactment of the amendments who can show that they create "a significant risk of prolonging his incarceration."

The Supreme Court's Wilkinson decision which was announced on March 7, 2005, ruled that an ex post facto claim of the nature presented here may be pursued in an action under § 1983. There is no need to exhaust state court remedies before filing a § 1983 action. Although Justice Scalia, in a concurring opinion in which Justice Thomas joined, suggested that habeas corpus would not be available to pursue such a claim, the majority ruling did not resolve that issue.

Given the "considerable jurisprudential confusion"[2] at the time surrounding the litigation of an ex post facto claim, it is unreasonable to expect that Polston could have predicted the Wilkinson decision. In any event, the issue is academic because the underlying claims lack merit whether brought in habeas or under § 1983.

---

[2] Defoy, 393 F.3d at 446 (Weis, J., concurring).

**Ex Post Facto**

Polston claims entitlement to federal habeas corpus relief on the grounds that the Parole Board violated the Ex Post Facto Clause of the United States Constitution by applying the 1996 amendments to Pennsylvania's parole regulations in his case. He contends that since his original state criminal conviction occurred in 1991, the parole regulations which were in effect at that time should be applied in his case.

As noted earlier, in 1996 the Pennsylvania legislature amended its parole law by setting forth the public policy statement of the Commonwealth concerning parole. Specifically, the 1996 legislation decreed that "the board shall first and foremost seek to protect the safety of the public." 61 P.S. § 331.1 (Purdon's 1999).[3] The former §

---

[3] After amendment, section 331.1 reads in full:

> The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison.
>
> In providing these benefits to the criminal justice system, the board shall first and foremost seek to protect the safety of the public. In addition to this goal, the board shall address input by crime victims and assist in the *fair administration of justice* by ensuring the custody, control and treatment of paroled offenders.

61 P.S. § 331.1 (Purdon's 1999)(emphasis added).

(continued...)

8

331.1 made no mention of pubic safety, and in fact declared the public policy of the Commonwealth to be that parole would be a period of rehabilitation of an inmate for his restoration to society.[4]

A new law or policy violates the Ex Post Facto Clause of the United States Constitution when it is applied to events which occurred prior to its enactment and disadvantages the offender affected by it.  Weaver v. Graham, 450 U.S. 24, 29 (1981). The Ex Post Facto Clause applies to a statutory or policy change that "alters the definition of criminal conduct or increases the penalty by which a crime is punishable." Mickens-Thomas v. Vaughn, 321 F.3d 374, 383 (3d Cir. 2003)("Mickens-Thomas I"), quoting, California Dept. of Corrections v. Morales, 514 U.S. 499, 506 n. 3 (1995). "One function of the *Ex Post Facto* Clause is to bar enactments, which by

---

[3](...continued)

[4]   Formerly, section 331.1 read as follows:

> The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

retroactive operation increase the punishment for a crime after its commission." Garner v. Jones, 529 U.S. 244, 249 (2000).  A retroactive application of a change in parole laws can constitute an ex post facto violation.  See id. at 250.

On February 13, 1998, Polston was initially considered for, and denied parole. The Parole Board listed the following factors in support of its decision:  substance abuse, habitual offender, assaultive instant offense, very high assaultive behavior potential, victim injury, need for treatment, failure to participate in a sex offenders program, and an unfavorable recommendation from the DOC.  See Record document no. 11, Exhibit F.

On December 30, 1999, the Petitioner was again denied release.  In its written decision, the Parole Board stated that its "mandate to protect the safety of the public and to assist in the fair administration of justice cannot be achieved through your release on parole."  Id. at Exhibit G.

The most recent denial of parole to Polston occurred on January 22, 2004.  In that ruling, the Parole Board noted that it had interviewed the Petitioner and reviewed his file.  See id. at Exhibit H.  The Parole Board concluded that "your best interests do not justify or require you being paroled/reparoled; and, the interests of the Commonwealth will be injured if you were paroled/reparoled."  Id.   The decision added that Polston would be reconsidered for parole during December, 2006, at which

time the Parole Board would consider:

> whether you have successfully completed a treatment program for: sex offenders that reconciles the official version and your version.
>
> Whether you have maintained a favorable recommendation for parole from the Department of Corrections.
>
> Whether you have maintained a clear conduct record and completed the County Prison's prescribed program(s).
>
> Your version of the crime and blaming others is totally incompatible with the facts of the crime.
>
> Updated sex offender program and sex offender assessment board evaluation to be available at time of review.

Id. The Parole Board issued a modified decision on May 7, 2004 which added that denial of parole was also appropriate because of Polston's version of the nature and circumstances of his underlying crimes, and that he had received fourteen (14) misconducts during the review period. It also clarified that Petitioner had to complete DOC prescriptive programs as opposed to county prison prescriptive programs. See id. at Exhibit I.

In Mickens-Thomas I, the Court of Appeals for the Third Circuit addressed the ex post facto ramifications of the 1996 parole amendments. The Third Circuit noted that the essential inquiry was "whether, in practice, the new language has altered the fundament for reviewing parole applications." Id. at 384 (emphasis added). It concluded that the 1996 amendments as applied to Mickens-Thomas constituted an Ex

11

Post Facto Clause violation, noting that there was "significant evidence that [the Board] acted upon policies that were established after [the petitioner]'s crime and conviction." Id. at 393. The Third Circuit explained:

> [A] parole decision that fails to address any of the criteria mandated by Board policy, such as institutional recommendations, willingness to undergo counseling and educational achievement, and instead utterly ignores all factors counseling in favor of release, falls outside the realm of the legitimate exercise of discretion under the pre-1996 policies. Inference instructs us that the Board inappropriately relied on policies implemented in 1996, rather than the parole policies in place at the time of Thomas's crime and conviction.

Id. at 387.

The Court noted that "[t]he Board mistakenly construed the 1996 statutory change to signify a substantive change in its parole function." Id. However, the Third Circuit recognized that a recent decision of the Pennsylvania Supreme Court, Winklespecht v. Pa. Bd. of Prob. & Parole, 571 Pa. 685, 813 A.2d 688 (2002), concluded that the amended § 331.1 did not require the Board to place the greatest weight on considerations of public safety. Id. Unfortunately, the Winklespecht decision was announced after the denial of parole to Mickens-Thomas.

With respect to Mickens-Thomas and other habeas applicants who were denied parole after adoption of the 1996 changes and before Winklespecht clarified the fact

12

that the amendment did not change the administration of the policies, the appropriate remedy for an ex post facto violation has been to remand the matter to the Parole Board for reconsideration, applying the pre-1996 law.[5]  See Hart v. Pa. Bd. of Prob. & Parole, 82 fed. Appx. 276 (3d Cir. Nov. 23, 2003); see also McLaurin v. Larkins, 76 Fed. Appx. 415 (3d Cir. Sept. 18, 2003); Hollawell v. Gillis, 65 Fed. Appx. 809, 2003 WL 1919371, at *8 (3d Cir. April 23, 2003).

In cases where parole was denied after Winklespecht, federal habeas corpus relief has been denied where it was evident that the denial of parole was based upon factors that would have resulted in the denial of parole under pre-1996 policies and practices.  See Grob v. Pa. Bd. of Prob. & Parole, Civil No. 3:CV-04-0275, slip op. at 6 (M.D. Pa. Oct. 29, 2004)(Nealon, J.); Sphar v. Pa. Bd. of Probation & Parole, Civil No. 3:CV-04-1145, slip op. at 7 (M.D. Pa. Oct. 29, 2004)(Munley, J.).

Recently, the Third Circuit stated that in order to obtain relief on an ex post facto claim, a Pennsylvania state prisoner must show "*both* a retroactive change in law or policy *and* that this change caused individual disadvantage" by increasing the risk of punishment.  Richardson v. Pennsylvania Parole Board, 2005 WL 2155505 *1 (3d Cir. Sept. 8, 2005)(emphasis in original).  In Richardson, the Court added that it was

---

[5]   Following remand in Mickens-Thomas I, the Parole Board again denied parole. The Third Circuit found that the Parole Board had exhibited "willful noncompliance, bad faith, and . . . vindictiveness" sufficient to direct the release of the petitioner. Mickens-Thomas v. Vaughn, 355 F.3d 294, 310 (3d Cir. 2004) ("Mickens-Thomas II").

not sufficient for a prisoner to merely "show that the Board relied on a new law or policy." Id. at * 9.  Rather, the inmate must show that he was personally disadvantaged.

The 2004 decision which denied parole to Polston clearly came after the Pennsylvania Supreme Court had decided Winklespecht.  Based on a review of the record, it was not the Parole Board's application of harsher laws or guidelines that caused the denial of parole.  The Parole Board's decision specifically enumerated legitimate reasons for denying parole that would have also warranted the denial of parole prior to the 1996 amendments.  Specifically, the Parole Board's written decision clearly stated that Polston was being denied parole based on his version of the nature and circumstances underlying his conviction; his poor institutional behavior consisting of fourteen (14) misconducts, and his blaming of others which was incompatible with the facts of his case.  See Record document no. 11, Exhibit I.

Unlike Mickens-Thomas I, the Parole Board had the benefit of Winklespecht prior to conducting Polston's 2004 parole review.  The Parole Board's decision listed a series of significant reasons for denying Polston parole which stress, not public safety issues, but rather the Petitioner's own conduct and the Parole Board's perception of his suitability for release.

The 2004 decision clearly voiced dissatisfaction with Polston's institutional behavior and lack of responsibility for his crimes.  Both of those matters are

14

encompassed in § 331.19 as factors to be considered in parole decisions.[6]

There is no indication that either public safety or the fair administration of justice was a controlling factor in the 2004 decision to deny Polston parole. It is apparent to this Court that Petitioner would have been denied parole regardless of the subsequent enactment of the 1996 amendments to the Parole Act. As required under Richardson, Polston has not shown that he was personally disadvantaged by the use of the 1996 amendments. Since a violation of the Ex Post Facto Clause has not been established, Petitioner's request for federal habeas corpus relief will be denied. Consequently,

**IT IS HEREBY ORDERED THAT:**

    1.    The petition for writ of habeas corpus is DISMISSED.

    2.    Polston's petition to supplement (Record document no. 13) is DENIED.

---

[6] § 331.19 provides in relevant part:

> It shall be the duty of the board . . . to consider the nature and circumstances of the offense committed, any recommendations made by the trial judge and prosecuting attorney, the general character and background of the prisoner. . . . The board shall further cause the conduct of the person while in prison and his physical, mental and behavior condition and history, . . . his complete criminal record, as far as the same may be known, to be reported and investigated.

      3.      Petitioner's motion (Record document no. 14) for discovery and deposition of records is DENIED.

      4.      The Clerk of Court is directed to close the case.

      5.      Based on the Court's determination herein, there is no basis for the issuance of a certificate of appealability.

          s/ James F. McClure, Jr.
          JAMES F. McCLURE, JR.
          United States District Judge